Oral argument not to exceed 15 minutes per side. Mr. Rake for the appellant. Morning. Morning. My name is Michael Rake. I'm here on behalf of the appellant. We're on behalf of the appellant. I'd like to please reserve three minutes for rebuttal. All right. May it please the court, this is a Social Security case for a Vietnam veteran combat medic who has been suffering from PTSD and who is found to be 100% disabled by the Veterans Administration. The Social Security Administration, however, denied his claim for benefits, finding that he was only mildly impaired by his PTSD and that he could perform work that didn't require strict production quotas. If you could just speak up a little or raise that to podium some. Yes, Your Honor. I apologize. We argue today that the findings by the Administrative Law Judge were not supported by substantial evidence and that she did not apply the correct legal criteria by failing to weigh the regulatory factors and giving weight to the reviewing opinion rather than the examining opinion of Dr. Papadakis. The magistrate judge in this case recommended reversal of the ALJ's decision and we agree with that. He noted in his report and recommendations that Dr. Papadakis's opinion was supported by two treating psychiatrists at the VA, Dr. Sebi and Dr. Sanders, and we would argue today primarily that the ALJ failed in her duties by not even mentioning these two doctors. We recognize that the doctors did not provide statements of disability, but they did provide statements in their record indicating that there were negative effects on the claimant's work, productivity, domestic relations and quality of life. And as the magistrate said, we believe that those opinions supported the ultimate determination of Dr. Papadakis at the VA that this individual was entitled to benefits. We also argue that the determination that was made by the VA, although not binding on the Social Security Administration, should have been given greater weight and greater consideration. Although this circuit hasn't indicated how much exact weight to give to a VA determination, it has indicated that the determination by the VA should be considered and other circuits have said that substantial and great weight ought to be given to these VA determinations. How many doctors examined your client at all? Yes, Your Honor. The doctor that we hope is granted significant weight is Dr. Papadakis. This is an examining doctor who reviewed the record, indicated that he reviewed the C-file, did a clinical interview and reviewed these psychiatric treatment notes from the two psychiatrists. And his opinion was that the claimant was entitled to benefits. Dr. Lewis, who the ALJ gave weight to, did not review the entire record and never observed the claimant. There's a case, Barker, where it's indicated that an examining source is only entitled to greater weight when they've reviewed the record and have had a chance to examine the claimant. And that's not the case here. It's also important that the judge give good reasons for rejecting the opinion of an examining source and we argued today that she didn't do so. The regulatory factors require her to consider issues of frequency, specialization, familiarity with the evidence, duration of sessions were mentioned in the ALJ's decision. Finally, I also think it's important, Your Honors, to consider the fact that the first time these doctors, the treating psychiatrists, are even mentioned by the agency is in the commissioner's brief. We would argue that it is a post hoc rationalization which is inconsistent when that's not something that the ALJ determined. We would also argue that the opinions are not inconsistent and that they should have been weighed as supportive of the opinion of Dr. Papadakis. I would also argue that the commissioner in the brief argues that Dr. Lewis's opinion, this reviewing source, should be given great weight and that the ALJ was correct in giving the opinion great weight, but I would point out today that at page ID 69 and page 6 of the ALJ's decision, she doesn't really even give great weight to this opinion. Dr. Lewis opined that the claimant was markedly impaired in his activities of daily living and the ALJ found him only mildly impaired. In paragraphs that follow one another, the ALJ says that the opinion is entitled to little, if any, weight when it opines a moderate impairment, but it's entitled to great weight when it opines a mild impairment. So to say that the judge accepted this opinion of Dr. Lewis is to some extent incorrect. We argue that she supplanted her own opinion and only found those areas of Dr. Lewis's opinion that supported her denial to cite to, and this is also error. Dr. Lewis was not a treating physician here in this case. No, Your Honor. Dr. Lewis was not a treating physician and Dr. Papadakis was not a treating physician either. Dr. Papadakis was only a consultative evaluator for the VA, and although my argument is that he should still have, as an examining source, he should have been given credit over a reviewing source. Dr. Papadakis was, he testified or gave a report in your benefit, right? Yes, Your Honor. Yes, Your Honor. And just from a general standpoint, VA treating specialists don't give opinions. The way they generally do it at the VA is that they have what's called a C&P exam or an examining opinion like this of Dr. Papadakis, and the judge in this case takes specific notice that no treating source has given an opinion supportive of disability, as if to say that no treating source has done that for her because they don't believe the claimant is disabled. But we would argue that that is incorrect. That is the way that the VA, in a person's case who has treatment at the VA, does those individuals a disservice because they will never have a treating source opinion. The best they'll ever have are these C&P exams that are, we argue, very credible based upon an evaluation of the evidence, based upon an examination. And again, there were treating sources in this case who did give statements that the magistrate judge believed were supportive of Dr. Papadakis. So to some extent, the judge's failure to even mention those doctors' names or consider their evidence is, we believe, a significant error. The judge does mention the claimant's therapist, Mr. Hugger, but we argue that it's possible that the judge may not have even in her decision that the claimant only had four appointments with the therapist, and that's not enough frequency to show a severe impairment. But the claimant argues that he had at least 12 appointments. Page ID 296, 286, 558, and 274 show these additional treatments by the psychiatrists that the ALJ appears not to have appreciated. So that's an error of fact that can't be substantial evidence in the rejection of this opinion by Dr. Papadakis. How old was your client at the time? He was, in social security terms, he was of advanced age, over 55 years old. Over 55? Yes, Your Honor. 560? He is now, Your Honor. These things drag out a long time. Yes, they do, Your Honor, and those facts are very significant to social security cases, particularly when there are physical problems involved. This is an individual with post-traumatic stress disorder, so the judge found him limited to medium work, but also gave very few mental work-related limitations, finding him incapable of assembly line production work. But at step five, we argue that they should have taken much more than that into consideration because this is an individual who clearly has been shown to have audio-visual hallucinations, anger, and flashbacks, and agitation, and all these symptoms that were found in Dr. Papadakis, and that rendered him disabled before the VA. I know that in their brief, the commissioner argued that the Social Security Administration is not bound by determinations by the VA, and we agree with that. Certainly, there are some VA decision, VA consultative evaluations that may be remote, that may have occurred 20 to 30 years ago, but in this case, the VA determination occurred right at the beginning of the relevant time period. This is a unique case in that way, and we would argue that that opinion is by far and away the best opinion in this case, and the ALJ's rejection of it is just not supported by substantial evidence. Thank you. Thank you. Good morning. Good morning. May it please the Court, I'm Rachel Julis on behalf of the Commissioner. Mr. Keeton would like you to credit the VA disability determination as well as Dr. Papadakis' opinion. However, it's important to note... Like other counsel, if you keep your voice up, I can hear you better. Sure. Sorry. It's important to note the time period of those opinions. Dr. Papadakis examined Mr. Keeton in November of 2006. This was right on the cusp of the period of time where Mr. Keeton stopped receiving regular mental health treatment. In April 2006, which is right around Mr. Keeton's alleged onset date, him and his therapist came to the conclusion that he was pretty stable, that while he was still having dreams, they weren't overwhelmingly emotional, that he had good anger control, that he was having a minimum of depressive incidents, and therefore, instead of having regularly scheduled sessions, him and his therapist decided that he would call if he needed an appointment. And after that point, he only his therapist, Mr. Hugger, maybe three times a year from 2006 to 2009. And all of those visits were precipitated by some sort of stressful event in his life, such as his father's declining health, his older brother's death, his father's eventual death, all those kinds of things. And he did see his treating psychiatrist during that time, Dr. Sebi, but he only saw him approximately once a year, three times between April 2006 and... Maybe he's having trouble seeing these doctors. They're saying that you can't get an appointment in the VA, you know, for a long period of time now. Was that going on at that time? You know, I'm not sure, but all of the treatment notes indicate that everyone was happy with the treatment schedule. It wasn't as if he was, you know, his therapist specifically said, just call when you need to be seen. He called, and he was seen. And his psychiatrist, there's nothing in the treatment notes to indicate that he thought that he should be seeing Mr. Keaton more often. He really saw him once a year for a medication check, and then, you know, said, go on your way. With his medications... Are these VA-affiliated doctors you're referring to right now? Yes, they both are. Of course, all these allegations that the VA falsifies records, and so we can't tell what's true or not. Well, I don't, I mean, I'm not entirely caught up on the news, but I don't think there are any allegations that they falsified the content of people's specific health records, but rather that they falsified the timing. Well, I don't know. That's what we don't know. Well, but I mean, there's no indication in this case that Mr. Keaton was not seen by these doctors and that they just, you know, created these opinions out of thin air. There's no indication that any doctor thought he needed to be seen more often and that he wasn't able to be seen. Let me ask you this. The one thing the ALJ was supposed to do in rendering his opinion is to take into account the records of the treating physicians and give those appropriate weight or explain why they weren't being given weight, if that was the case. And the ALJ didn't seem to do that with respect to the records of Dr. Sabe, if I'm pronouncing that correctly, and Dr. Sanders, especially with respect to Dr. Sabe, who would seem to easily qualify as a treating physician because he saw the patient seven, eight times. Isn't that a problem in how the ALJ prepared his findings here? I agree that Dr. Sabe is certainly a treating source. He saw him regularly. And while the ALJ didn't mention Dr. Sabe by name, she referenced his treatment notes about 13 or 14 times in her decision. Well, those notes were only mentioned pretty much in passing. I mean, there was no consideration or opinion, at least I don't think, as to the import of what that doctor had to say in reaching an overall assessment. And certainly there was never any acknowledgment that Dr. Sabe was a treating physician. And the consideration just seemed wholly inadequate. Well, Dr. Sabe never issued a medical opinion that the ALJ could weigh, per se, like an actual opinion. But the bulk of her review of Mr. Keaton's history, his flashbacks, his nightmares, his, you know, the medications he was taking, all of that information came from Dr. Sabe's notes. So, I mean, she did fail to name him, and she did fail to, you know, devote a paragraph explaining the weight she gave to his notes. But when she weighed his treatment history and the severity of his symptoms, all of that information essentially came from Dr. Sabe's notes. Was she required under our case law to give an explanation as to why she would not afford weight, more weight, for example, to the treating physician than to somebody who never saw him at all? Well, again, I don't think there's, I mean, there's no official medical opinion from Dr. Sabe's treatment notes. I mean, there's nothing in them to, there's nothing in them saying that Mr. Keaton was unable to do X, Y, or Z, or that he had limitations with concentration. There's none of those sort of functional limitations, and there's no sort of overall examination of Mr. Keaton's abilities. Instead, his notes, you know, talk about how he had linear thought process and how he, his mood was better, his affect was not labile, things like that. So, and she considered all of those things, but there was no opinion for her to weigh. You know, it would seem in this case that quite apart from what's required and what isn't, it would seem in this case, I mean, the evidence from the VA is really quite consistent even though it may not result in, you know, an ultimate opinion about his ability to work. It really strongly supports the examining physician's opinion, Dr. Papadakis, I think that's how we pronounce it, and then, you know, and yet somehow Dr. Lewis becomes in the mind of the ALJ the person to whose opinion she gives the opinion. It's just a, it's kind of a mishmash, particularly given her failure to even recognize the treating physician and the whole, I don't know, the whole opinion seems to have a number of errors here and there. It just doesn't flow like a comprehensive assessment that seeks to, to determine how much weight to give to the evidence in light of other pieces of evidence. I think, again, the dates are critical here. The VA opinion that he was disabled and Dr. Papadakis' opinion were from early on in this, in the relevant time period. They were from 2006 and January of 2007, and after that point, starting in April 2006, his condition by all means, he had barely received mental health treatment. He seemed to be functioning at a, at a okay level. Not great, but her, the RFC is fairly restrictive. Dr. Lewis didn't examine the record until February of 2008. At that point, she had a longitudinal view of the fact that Mr. Keaton had received only sporadic as-needed mental health treatment since, you know, the time that Dr. Papadakis' opinion was written. So she really did have a better longitudinal view of his condition, day-to-day abilities during the relevant time period. So I think, I mean, before April 2006, he was seeing his counselor every two weeks. He was seeing his psychiatrist more often. But after that point, because of the improvement and on the advice of his therapist, his mental health treatment really became extremely sporadic and only occurred when he was going through a stressful time, which exacerbated his PTSD symptoms. Well, sometimes people... That's not... Excuse me. Go ahead. Go ahead. Sometimes people get so sick that they don't go back to their doctors, right? I mean, they, that's part of his symptoms. He's got mental problems. He has these flashbacks and, and difficulties in taking care of his father who had Alzheimer's and that sort of thing. And that's true, but again, there's no indication in this record that that was the case. There's no treatment records from his therapist saying he's really been doing badly for months, but he wasn't able to call. I mean, he did go three, four times a year. So clearly when he needed treatment, he could call. And I mean, the latest notes even say that he, you know, he's, he's been doing well. He's had very mild symptomology, you know, with pockets of not, of times when his PTSD symptoms were exacerbated. But those periods seem very short. The ALJ does not give the significant, any significance to the passage of time in the way you did. I mean, that's not part of her reasoning. Well, I think she does by focusing on the fact that he had very sporadic health treatment and, you know, naming the few times that he saw his therapist after, you know, after the alleged onset date. And I mean, her, her opinion is not perfect, but the, you know, the record as a whole is supportive of her decision, or her decision is supported by the record. All right. If you don't have anything else. Thank you. Thank you. Any rebuttal? Thank you. Just very briefly, your honors. We would like to argue that there is actually the opposite indication in the record that his condition has improved. He was given increased dosages of medication. He reported increased symptoms, particularly with the fact that his father was very, very sick, and it was reminding him of, of being a medic in Vietnam, taking care of people. I would also point out that the judge's opinion here is in many instances incomplete. She says, for example, that he sees his friends one time a week, and that's an indication that he's able to get out and about, but she fails to note that these friends he sees are other Vietnam veterans that he talks to about his condition, almost as if it's like a counseling session, and that these are things that help him cope. She also brings up the fact that at the same day that he had an evaluation done by Dr. Papadakis, he saw an unrelated physical doctor there at the VA, and that that doctor didn't notice any problems with his gait or his stress level, but we would argue that that's also an error of fact. Indeed, his blood pressure was high. He explained that he was very stressed out, having just come from a psychological evaluation. So, we just respectfully request that the court review the report and recommendations from the magistrate judge, and the fact that this ALJ's opinion appears to be deficient on many, many areas. Thank you. Thank you very much. The case is submitted, and you may call the next case.